IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNYFER GORMAZ-LEMONS, | |
| Plaintiff, | No. 22-cv-07140 |
| v. | Judge John F. Kness |
| LELAND DUDEK, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,[1] | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennyfer Gormaz-Lemons appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability benefits. Because the Commissioner adequately supported its decision, Plaintiff's appeal fails, and the Commissioner's motion for summary judgment (Dkt. 11) is granted.

**I.     BACKGROUND**

Plaintiff began experiencing back pain in January 2020 after lifting a tray at work. (Dkt. 10 at 1.) Plaintiff underwent an MRI of the lumbar spine in February 2020, revealing localized disc disease. (*Id.*) Further imaging, including MRI and X-

---

[1] Acting Commissioner Dudek is automatically substituted as Defendant by operation of Rule 25(d) of the Federal Rules of Civil Procedure.

ray imaging, in August 2020 and November 2020 showed evidence of lumbar disc damage. (*Id.*)

In December 2020, Plaintiff visited her physician, Dr. Hanna, who provided a medical opinion to an insurance company stating that Plaintiff could not work due to her pain, could stand "only for 45 minutes at a time, could sit for 30 to 45 minutes at a time, and could lift about a gallon of milk at most due to pain." (Dkt. 10 at 3 (citing Dkt. 7-1 at 386).) Plaintiff had surgery on her lumbar spine in March 2021. (*Id.*)

Following her surgery, treating physicians reported that Plaintiff experienced improved functioning and less pain. (Dkt. 12 at 5 (citing Dkt. 7-1 at 25–26).) To some extent certain symptoms returned: treatment notes from August 2021 through November 2021 from physical therapists documented that her pain resumed in her lower back (Dkt. 10 at 2 (citing Dkt. 7-2 at 851, 853, 863, 866)), but reports from December 2021 showed full strength in her lower extremities despite continuing low back pain (Dkt. 12 at 5 (citing Dkt. 7-1 at 27)).

Plaintiff applied for disability insurance benefits on October 15, 2020, alleging a disability onset date of March 17, 2020. (Dkt. 10 at 1 (citing Dkt. 7-1 at 75).) Plaintiff's claim was initially denied (Dkt. 7-1 at 84) and upon reconsideration was denied again (*id.* at 92). Following a hearing, Administrative Law Judge (ALJ) Edward Studzinski issued an unfavorable decision. (*Id.* at 18.) The ALJ found that, although Plaintiff suffered from lumbar spine degenerative disc disease, Plaintiff had the residual function capacity (RFC) to perform sedentary work with additional limitations. (*Id.* at 24–25.) These limitations included the limited ability to lift up to

ten pounds. The ALJ found no limitations on Plaintiff's ability to sit throughout an eight-hour workday, although Plaintiff could stand or walk for a total of two out of eight hours and should be allowed use of a cane. (*Id.*) In addition, the ALJ established limitations on movements and work environments. (*Id.*) On review, the Appeals Council denied Plaintiff's request for review (*id.* at 1), making the ALJ's decision the final decision of the Commissioner.

## II. STANDARD OF REVIEW

A claimant can petition a federal court for judicial review of a final decision by the Commissioner under 42 U.S.C. § 405(g). A federal court will uphold the decision so long as it is supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence "is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 900; *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). And as the Seventh Circuit has explained, Social Security adjudicators "are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

Put another way, an ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (cleaned up). This is so a reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id.* (cleaned up).

## III. DISCUSSION

Plaintiff argues that reversal is warranted for four reasons: (1) the ALJ failed to account for Plaintiff's mental impairments; (2) the ALJ improperly discounted the opinion of Dr. Hanna; (3) the RFC is not supported by substantial evidence; and (4) the ALJ improperly discounted Plaintiff's own reports of her symptoms. But for the reasons explained below, the ALJ's decision was both proper and supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed.

### A. Evaluation of Plaintiff's Mental Impairments

Plaintiff alleges that the ALJ erred by failing to acknowledge Plaintiff's mental impairments. (Dkt. 10 at 4.) Plaintiff characterizes this as reversible error because consideration of Plaintiff's mental health issues would have resulted in a finding that Plaintiff was incapable of full-time unskilled work. (*Id.*) Plaintiff asserts that the ALJ's residual functional capacity (RFC) report is therefore inaccurate because it did not consider all relevant evidence, and incomplete because it did not explain how Plaintiff's mental impairment factored into that determination. (*Id.* at 4–5.)

In response to this argument, the Commissioner asserts that Plaintiff "never asserted mental limitations in any significant fashion before the ALJ." (Dkt. 12 at 2). The Commissioner points to Plaintiff's initial application for benefits, which did not

4

include mental limitations among the conditions limiting her ability to work. (*Id.* (citing Dkt. 7-1 at 200).) When asked in March 2021, July 2021, and November 2021 of any updates to her conditions, Plaintiff did not mention her mental impairments. (*Id.*) Plaintiff also described no mental symptoms during a June 2021 consultative examination. (*Id.*) Plaintiff similarly did not articulate her mental impairment in a pre-hearing brief with the ALJ. (*Id.*)

In the Commissioner's view, the evidence Plaintiff presented regarding her mental impairment was "underwhelming." (*Id.* at 4.) In support of this position, the Commissioner cites Plaintiff's positive mental status at doctor appointments in September and November 2021, a lack of treatment for mental health deficiencies, and consistently normal reports of mental health in treatment notes. (*Id.*) The Commissioner acknowledges the existence of evidence between November 2021 and December 2021 of "some ongoing symptoms," but the evidence also suggests improvement during this period. (*Id.*)

Plaintiff responds that the ALJ allowed an extra thirty days for the Plaintiff to submit additional medical records into evidence. Those late-coming records, Plaintiff says, included evidence of mental impairments. (Dkt. 13 at 2.) Plaintiff also argues that the Commissioner's reweighing of this evidence in its response brief constitutes impermissible post-hoc rationalization. (*Id.*)

Although the ALJ remained silent on this late-coming evidence of mental impairment, that omission is not reversible error. Plaintiff is correct that the Commissioner's assessment of the evidence in its response brief is improper. But

5

although the hearing transcript reflects the ALJ's allowance of extra time to submit more medical records into evidence, that exchange between the ALJ and Plaintiff's counsel does not include any discussion that the late-coming records were relevant to a finding of disability based on mental impairment. (Dkt. 7-1 at 40–41.)

On this basis—that is, because mental impairment was never raised as a reason to find a disability—the ALJ did not err by failing to discuss evidence of mental impairment. A finding to the contrary would unduly excuse the burden a claimant bears to establish the existence of a sufficiently severe impairment. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). If the rule was that the mere presence of evidence in the record triggers an ALJ's duty to consider it, there would be no need for the adjudicative process set forth by statute. Simple production of a medical record (perhaps numbering in the hundreds or thousands of pages) would instead meet the claimant's burden and trigger a requirement that the ALJ sift through the record without the benefit of any direction by the claimant. Put another way, the claimant would be relieved of the responsibility to state the basis or bases for a claim of disability. That, of course, is not the standard.

Plaintiff's contention that the ALJ "ignore[ed]" this evidence (Dkt. 13 at 4) is therefore unpersuasive. As Plaintiff notes, Social Security Ruling (SSR) 96-8p requires an ALJ to assess "all of the relevant evidence in the case record." The Court finds that the ALJ did indeed consider all the *relevant* evidence regarding Plaintiff's allegations of disability. The ALJ therefore did not err in not considering Plaintiff's late-coming evidence of mental impairment.

6

B.     Evaluation of Dr. Hanna's opinion

Plaintiff next argues that the ALJ's evaluation of Dr. Hanna's opinion was improper. As the ALJ explained, Dr. Hanna noted Plaintiff's inability to "function at work secondary to pain and it is further noted that [Plaintiff] can stand only for 45 minutes at a time, she can sit for 30 to 45 minutes at a time, and she is only limited in lifting about a gallon of mil[k] at the most because of pain." (Dkt. 7-1 at 28.) Plaintiff contends that the ALJ made a "mistake of fact" (Dkt. 10 at 6) when the ALJ stated that it was unclear "whether these responses are [Plaintiff's] subjective allegations or whether this is Dr. Hanna's medical opinion based on his evaluation findings." (Dkt. 7-1 at 28.) Plaintiff argues that the ALJ's uncertainty casts doubt on the ALJ's overall decision because it is "unknown how the ALJ would have considered [Dr. Hanna's testimony], had he been aware that [Plaintiff] did not supply the answers." (*Id.* at 7.)

Plaintiff continues by contenting the ALJ failed adequately to evaluate Dr. Hanna's opinion in accordance with § 404.1520c, which establishes that the "most important factors" ALJs consider in determining the persuasiveness of a medical opinion are "supportability" by relevant evidence and "consistency" with other medical evidence in the record. (*Id.*) When evaluating Dr. Hanna's opinion, the ALJ commented that the "evidence available at this time does not support limitations to [the] extent" concluded by Dr. Hanna. (*Id.* (citing Dkt. 7-1 at 28).) Plaintiff contends that, because the ALJ should have evaluated Dr. Hanna's treatments notes for supportability and consistency, this evaluation violated § 404.1520c. (*Id.*) Plaintiff

7

points to the treatment notes of other providers, taken together with Dr. Hanna's notes, to support Dr. Hanna's opinion and argue that the ALJ's evaluation of Dr. Hanna's medical opinion was not supported by substantial evidence. (*Id.*)

In response, the Commissioner asserts that the ALJ's reason for discounting Dr. Hanna's opinion was because later medical testimony did not support Dr. Hanna's earlier assessment. (Dkt. 12 at 5–6.) The Commissioner contends that Plaintiff's substantial improvement following her March 2021 surgery constitutes the "most important evidence" the ALJ considered in discounting Dr. Hanna's opinion; evidence of that improvement included showings of full strength and improved functioning (*Id.* at 7 (citing Dkt. 7-2 at 843, 846, 872).) As the Commissioner notes, even the most recent medical testimony by Plaintiff's orthopedic surgeon Dr. Conti Mica noted that Plaintiff could "return back to work without restrictions." (*Id.* at 6 (quoting Dkt. 7-2 at 846).) And the State agency doctor reviewing Plaintiff's condition found her capable of a reduced range of light work. (*Id.* at 7 (citing Dkt. 7-1 at 90–91).)

The ALJ did not err in determining that the record evidence did not fully support Dr. Hanna's evaluation of Plaintiff's limitations. As the ALJ noted, Dr. Hanna's findings of Plaintiff's limitations followed an examination in December 2020, but Plaintiff's surgery four months later resulted in substantial resolution of the condition that Dr. Hanna evaluated. (Dkt. 7-1 at 26–27.) This conclusion that "the evidence available at this time does not support limitations to this extent" reflects a permissible analysis by the ALJ of Dr. Hanna's findings taken in the light of later (meaning more relevant) evidence. (*Id.* at 27.) The ALJ's conclusion also does not run

8

afoul of § 404.1520c because the ALJ clearly stated that the persuasiveness of Dr. Hanna's conclusions was lessened given later substantial evidence. In sum, the ALJ's consideration of Dr. Hanna's opinions was proper.

## C. Support for the RFC

Plaintiff also argues that the ALJ's RFC finding violated SSR 96-8p by failing to consider, or by giving inadequate consideration to, certain evidence. (Dkt. 10 at 9.) Plaintiff asserts that the ALJ improperly evaluated evidence concerning Plaintiff's ability to stoop, ability to sit and stand, and migraines. (*Id.* at 9–12.)

### 1. *Ability to stoop*

Plaintiff contends that the ALJ's RFC finding that Plaintiff could "occasionally stoop" directly conflicted evidence presented by the Plaintiff. (*Id.* at 9 (citing Dkt. 7-1 at 24).) Plaintiff cites Dr. Ahmed's testimony that her ability to flex in her lumbar spine was "abnormal"; Plaintiff's claim that she could not load dishes into her dishwasher; and treating physical therapists' documentation that Plaintiff had limited (50 percent) stooping ability. (*Id.*)

In response, the Commissioner contends that State agency evaluator Dr. Reddy "considered [her 30-of-90 degrees of lumbar flexion] and expressly found Plaintiff capable of occasional stooping." (Dkt. 12 at 8 (citing Dkt. 7-1 at 90).) The Commissioner also notes *Vincent A. v. Berryhill,* No. 16 C 7136, 2019 WL 2085104, at *6 (N.D. Ill. May 13, 2019), where the district court upheld an ALJ's decision to recommend occasional stooping despite finding limited lumbar flexion. (*Id.* at 8–9.) As the Commissioner contends, Plaintiff's demonstration of full strength and few

9

significant abnormalities following surgery further supported the ALJ's decision to recommend occasional stooping. (*Id.* at 9 (citing Dkt. 7-1 at 26–28).)

There was no error in the ALJ's consideration of Plaintiff's ability to stoop. The ALJ sufficiently explained Dr. Ahmed's findings, and immediately after doing so, the ALJ wrote: "Despite the consultative evaluation findings of Dr. Ahmed, subsequent follow-up reports . . . indicated the claimant had 'excellent resolution of her symptoms.'" (Dkt. 7-1 at 26.) Crediting reports from later examinations that indicated substantial improvement was also not erroneous. And even after noting some residual pain and issues with mobility, the ALJ still incorporated numerous limitations in the RFC. (*Id.* at 27.)

### 2. *Ability to sit and stand*

Plaintiff next argues that the record reflects a need for the RFC to incorporate a sit-stand option. (Dkt. 10 at 10.) Plaintiff testified that "she could only sit for 15 minutes before needing to stand, and could stand for 15 to 20 minutes before needing to sit or walk." (*Id.*) Plaintiff argues that the RFC's determination that Plaintiff could sit for eight hours contradicts this sit/stand necessity without discussing it and is, therefore, erroneous. (*Id.* at 11.)

In response, the Commissioner argues that the ALJ correctly dismissed Plaintiff's request for a sit-stand option, as the request was based on Dr. Hanna's outdated opinion and not supported by more recent medical testimony. (Dkt. 12 at 9.) Instead, the Commissioner contends, the ALJ relied on later opinions that did not note a need for a sit/stand option. (*Id.* (citing, *inter alia*, Dkt. 7-1 at 80–81).)

10

The ALJ properly weighed evidence from evaluations made after Dr. Hannah's, which found that Plaintiff could sit and "stand and/or walk", with normal breaks, for about six hours in an eight-hour workday. (Dkt. 7-1 at 80–81.) Notably, the ALJ also found persuasive one evaluator's conclusion that "the claimant was able to function at a higher capacity than she stated, demonstrated, or perceived." (*Id.* at 28 (citing *id.* at 290).) Finally, the ALJ credited a progress report from June 2021 that noted substantial resolution of Plaintiff's symptoms and stated that Plaintiff was "ready to return back to work without restrictions." (*Id.* (quoting Dkt. 7-2 at 846).)

      3.    *Migraines*

Plaintiff's final challenge to the RFC finding is that the ALJ failed to evaluate evidence of Plaintiff's migraines. Plaintiff alleges that she suffers from twelve to fifteen migraines per month, and that the migraines are so debilitating that Plaintiff would have to lie down in a dark room and take medication for relief. (Dkt. 10 at 11–12.) Plaintiff identifies the notes of Dr. Grace Cheng, which report Plaintiff's complaints of migraines. (*Id.*)

As the Commissioner points out, Plaintiff complained about these allegedly frequent and serious migraines only one time during a doctor visit. (Dkt. 12 at 9.) In addition, Plaintiff did not premise disability on migraines in her initial application or mention them in her consultative examination or during a pre-hearing brief with the ALJ. (*Id.*) Finally, the Commissioner explains that, as evidence of migraines, Plaintiff cites only her own testimony—which is not binding on the ALJ—and a single

11

complaint to a doctor made several months before Plaintiff's alleged disability onset date. (*Id.* at 10.)

As discussed above regarding Plaintiff's alleged mental impairment, untimely allegations of disability are not an appropriate basis to overturn an ALJ's decision. The ALJ therefore did not err by not considering Plaintiff's proffered evidence of her migraines. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022) (plaintiff bears burden of establishing disability); SSR 96-8p (ALJ must assess "all of the *relevant* evidence in the case record") (emphasis added).

### D. The ALJ's symptoms evaluation

Plaintiff asserts at the last that the ALJ improperly considered Plaintiff's subjective allegations by ignoring evidence that Plaintiff's pain, reduced range of motion, and reduced strength after her March 2021 surgery. (Dkt. 10 at 12.) According to Plaintiff, the ALJ erred by cherry-picking the evidence that supported a finding of nondisability. (*Id.* (citing *Yurt v. Colvin*, 758 F.3d 850, 859–60 (7th Cir. 2014).) Plaintiff refers to treatment notes from physical therapists from August 2021 through November 2021—that is, post-surgery—documenting her increase in pain and decreased range of motion. (*Id.* at 13.) Plaintiff also alleges that the ALJ erred by not discussing Plaintiff's reliance on her husband and children for daily living. (*Id.* at 14 (citing SSR 16-3p).)

In contrast, the Commissioner counters that, because the ALJ identified evidence that contradicted Plaintiff's testimony, the ALJ properly discounted Plaintiff's subjective allegations. (Dkt. 12 at 11.) Such evidence included that

12

Plaintiff's treating physician cleared Plaintiff to return to work after surgery (Dkt. 7-1 at 27–28 (citing Dkt. 7-2 at 846)), and that Plaintiff's physical therapist "concluded [Plaintiff] was able to function at a higher capacity than [Plaintiff] stated, demonstrated, or perceived." (*Id.* at 28 (citing *id.* at 290).) In addition, the ALJ credited evidence that surgery did not eliminate Plaintiff's pain and physical limitations and incorporated that fact into the RFC by imposing certain restrictions. (Dkt. 12 at 11.) Finally, the Commissioner points out the ALJ's statement that Plaintiff "said she is unable to do housework or laundry" because of her alleged impairments. (Dkt. 12 at 11–12 (citing Dkt. 7-1 at 25).)

In sum, the ALJ did not err in its consideration of Plaintiff's subjective allegations. ALJs are not required merely to credit a claimant's statements of their own symptoms simply because they were made; rather, SSR 16-3p explains that ALJs "evaluate whether the statements are consistent with objective medical evidence . . . ." In this instance, the ALJ properly weighed conflicting evidence regarding the return of pain post-surgery, and this Court sitting in review cannot re-weigh that evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). As the ALJ explained, Plaintiff's testimony was inconsistent with reports from doctors and physical therapists, and the ALJ cited one physical therapist who reported that Plaintiff's stated limitations did not align with the professional's observations. (Dkt. 7-1 at 28.) In any event, the RFC does not reflect a finding by the ALJ that all of Plaintiff's impairments were resolved by surgery; on the contrary, the RFC

13

establishes numerous limitations in line with Plaintiff's physical impairments. (*See id.* at 24.)

## IV. CONCLUSION

For the reasons stated above, the ALJ did not commit reversible error. Accordingly, the Commissioner's motion for summary judgment is granted.

SO ORDERED in No. 22-cv-07140.

Date: March 31, 2025

JOHN F. KNESS
United States District Judge